**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MAHMMOUD SAKHI, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 4:15-cv-01668 |
| BLUENRGY GROUP LIMITED, f/k/a CBD ENERGY LIMITED, ET AL., | ) | |
| Defendants. | ) | |

**DEFENDANT RICHARD PILLINGER'S (1) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND (2) JOINDER IN MOTION TO DISMISS FILED BY DEFENDANTS NATIONAL SECURITIES CORPORATION AND NORTHLAND SECURITIES, INC.**

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENTS ........ 1
NATURE AND STAGE OF PROCEEDING ........ 2
STATEMENT OF THE ISSUES ........ 3
BACKGROUND FACTS ........ 3
The Parties ........ 3
The Offering ........ 4
CBD's Post-Offering Statements and Voluntary Administration Proceeding ........ 5
This Lawsuit ........ 5
Plaintiffs' Belated Service on Pillinger ........ 6
ARGUMENT ........ 8
I. Plaintiffs' Claims Against Pillinger Should Be Dismissed Because Plaintiffs Failed To Timely Serve Pillinger ........ 8
A. Plaintiffs Failed To Exercise Diligence In Serving Pillinger ........ 10
B. Dismissal Is In The Interest Of Justice Because There Is A Clear Record Of Delay ........ 12
II. The Lead Plaintiff's Section 11 Claim Fails For The Reasons Set Forth In The Underwriters' Motion To Dismiss ........ 14
CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allstate Ins. Co. v. Funai Corp.*,
249 F.R.D. 157 (M.D. Pa. 2008)....................10

*Arrow Electronics, Inc. v. Hecmma, Inc.*,
No. EP-04-CA-390-PRM, 2005 WL 2548225 (W.D. Tex. Oct. 11, 2005)....................9

*Banco Central de Paraguay ex rel. Banco Union S.A.E.C.A. v. Paraguay Humanitarian Found., Inc.*,
No. 01 Civ. 9649, 2005 WL 2861598 (S.D.N.Y. Oct. 31, 2005)....................9

*Buffer v. GRM Comms., Inc.*,
No. EP-09-CV-421-DB, 2010 WL 11252498 (W.D. Tex. Oct. 5, 2010)....................10

*Gartin v. Par Pharm. Cos., Inc.*,
289 Fed. App'x 688 (5th Cir. 2008)....................1, 8, 13

*Harris v. Orange S.A.*,
_ Fed. App'x _, 2015 WL 9583862 (11th Cir. Dec. 30, 2015)....................9

*Kapps v. Torch Offshore, Inc.*,
379 F.3d 207 (5th Cir. 2004)....................14

*Link v. Wabash R.R. Co.*,
370 U.S. 626 (1962)....................9

*Lozano v. Bosdet*,
693 F.3d 485 (5th Cir. 2012)....................8, 9, 10, 13

*Millan v. USAA Gen. Indem. Co.*,
546 F.3d 321 (5th Cir. 2008)....................9, 10, 13

*Newby v. Enron Corp.*,
284 Fed. App'x 146 (5th Cir. 2008)....................13

*Nylok Corp. v. Fastener World Inc.*,
396 F.3d 805 (7th Cir. 2005)....................10, 11

*Papst Licensing GmbH & Co. KG v. Sunonwealtlh Elec. Mach. Ind. Co., Ltd.*,
332 F. Supp. 2d 1142 (N.D. Ill. 2004)....................9

*Read v. Input/Output*,
No. H-05-0108 (S.D. Tex. June 22, 2015)....................12

*Russo Secs., Inc. v. Ryckman*,
159 Fed. App'x 294 (2d Cir. 2005)....................10

*Simmons v. Regency Leasing LLC*,
No. H-12-1512, 2013 WL 6190218 (S.D. Tex. Nov. 26, 2013) ................................................8

*USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
421 F.3d 129 (2d Cir. 2005)................................................................................................10

*Veazey v. Young's Yacht Sale & Serv., Inc.*,
644 F.2d 475 (5th Cir. 1981) ..........................................................................................8, 12

*Williams v. New Orleans Pub. Serv., Inc.*,
728 F.2d 730 (5th Cir. 1984) ................................................................................................8

*Yellowave Corp. v. Mana*,
No. 00 CIV 2267 SAS, 2000 WL 1508249 (S.D.N.Y. Oct. 11, 2000).....................................9

**Statutes and Rules**

15 U.S.C. § 77m...................................................................................................................12

Fed. R. Civ. P. 4(m) ...............................................................................................................8

Defendant Richard Pillinger ("Pillinger") moves to dismiss Plaintiffs' Amended Class Action Complaint for Violations of Federal Securities Laws ("Amended Complaint") pursuant to Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure. Pillinger further joins in the motion to dismiss filed by defendants National Securities Corporation and Northland Securities, Inc. pursuant to Rule 12(b)(6) (ECF Doc. No. 45) (the "Underwriters' Motion to Dismiss") and urges dismissal for the reasons set forth therein.

**SUMMARY OF ARGUMENTS**

This action arises from a June 2014 public stock offering by defendant CBD Energy Ltd. (now known as BlueNRGY Group Limited) ("CBD" or the "Company"), a publicly traded Australian corporation based in Sydney. Plaintiffs assert claims against twelve individuals and entities for alleged violations of the Securities Act of 1933 (the "Securities Act"). The claims against Pillinger, who is CBD's Chief Financial Officer, should be dismissed for two reasons.

First, Plaintiffs inexcusably and unjustifiably delayed even attempting to serve Pillinger with a summons and copy of the complaint for 194 days. Then, when Plaintiffs finally *started* the process of serving Pillinger in his home country of Australia, they attempted to do so at CBD's prior business address that was occupied by a different company—a fact that should have been known to Plaintiffs had they conducted even a simple Internet search. Plaintiffs did not ultimately serve Pillinger with a summons and copy of the complaint until over a year (377 days) after suit was filed. During this period the case continued to move forward. A lead plaintiff was appointed, the case was transferred from the Eastern District of Texas to this Court, and three defendants moved to dismiss. There is a clear record of delay here caused solely by Plaintiffs' inaction and lack of diligence, and dismissal is warranted. *See Gartin v. Par Pharm. Cos., Inc.*, 289 Fed. App'x 688, 694 (5th Cir. 2008) ("a seven-month period of what can only be

characterized as total inactivity" constitutes a "clear record of delay" warranting dismissal with prejudice).

Second, as set forth in the Underwriters' Motion to Dismiss, the Lead Plaintiff here admits he did not purchase shares until almost two months after the offering in question had closed and fails to plausibly allege that his shares are traceable to the challenged registration statement. Accordingly, Lead Plaintiff's claims for alleged violations of the Securities Act fail as a matter of law and the case should be dismissed.

## NATURE AND STAGE OF PROCEEDING

This is a putative class action brought on behalf of certain persons who purchased shares issued in connection with CBD's June 2014 public stock offering. ¶ 1.[1] Plaintiffs originally filed this case on October 27, 2014 in the Eastern District of Texas. On June 12, 2015, the case was transferred to this Court (*see* ECF Doc. No. 17). On August 13, 2015, Plaintiffs filed the Amended Complaint (*see* ECF Doc. No. 27). On October 30, 2015, defendants National Securities Corporation and Northland Securities, Inc. (collectively, the "Underwriters") and defendant PricewaterhouseCoopers LLP ("PwC US") moved to dismiss (*see* ECF Doc. Nos. 45, 46).

On November 24, 2015, Plaintiffs moved to further amend their amended complaint "in order to address issues raised in [PwC US's] motion to dismiss" (*see* ECF Doc. No. 51 at 3). On January 20, 2016, the Court denied the motion to further amend the amended complaint (*see* ECF Doc. No. 64) and, on January 21, 2016, Plaintiffs stipulated to dismissal of the claims against PwC US (*see* ECF Doc. No. 65).

[1] Unless otherwise noted, citations to "¶ __" are to the Amended Complaint (ECF Doc. No. 27). Citations to "Oakes Decl." are to the Declaration of Mark Oakes filed contemporaneously with this memorandum, and citations to "Pillinger Decl." are to the Declaration of Richard Pillinger filed contemporaneously with this memorandum.

Pillinger was not served until over a year after this case was filed and this is his first substantive filing in this case (*see* ECF Doc. No. 69). No other individual defendants have appeared in this case—presumably because they have not been served.

**STATEMENT OF THE ISSUES**

1. Whether the claims against Pillinger should be dismissed because Plaintiffs, who did not serve Pillinger with a copy of the complaint and summons until over a year after filing suit, and did not even start the process of trying to serve Pillinger until 194 days after filing suit, failed to timely effectuate service.

2. Whether Lead Plaintiff's claims fail because he did not purchase shares until almost two months after the offering in question had closed and fails to plausibly allege that his shares are traceable to the challenged registration statement.

**BACKGROUND FACTS**

***The Parties***

Defendant CBD, now known as BlueNRGY Group Ltd., is an Australian corporation headquartered in Sydney, Australia that provides renewable energy solutions. ¶ 17. CBD's shares have been publicly traded since 1989. Oakes Decl., Ex. A at 29. Defendant CBD Energy USA Limited is a wholly owned subsidiary of CBD. ¶ 18.

Defendants Gerard McGowan, Todd Barlow, Carlo Botto, William Morro, James Greer, Patrick Lennon, and Pillinger are current or former officers and/or directors of CBD or its affiliate CBD Energy USA Limited. ¶¶ 19-25.

Defendants National Securities Corporation and Northland Securities, Inc. served as the underwriters for CBD's June 2014 public stock offering discussed below. ¶¶ 27-28.

Defendant PricewaterhouseCoopers – Australian Firm ("PwC Australia") served as CBD's independent auditor. ¶ 31.[2]

Lead Plaintiff Mahmmoud Sakhi purportedly purchased CBD shares on various dates in August 2014. *See* Sakhi Certification (ECF Doc. No. 12-5.) Although Sakhi admits he did not purchase shares until almost two months after the offering in question, he alleges, without any particularized factual allegations in support, that he purchased his shares "pursuant to or traceable to CBD's Offering." ¶ 14. The Amended Complaint also purported to add Joseph Pankowski and Dmytro Kavchak as named plaintiffs. ¶¶ 15, 16. Kavchak, like Sakhi, admits he did not purchase shares until August 2014 and alleges no particularized facts showing that his shares are traceable to the offering. *See* Kavchak Certification (ECF Doc. No. 27-2.) Pankowski purportedly purchased shares on June 13, 2014 directly from defendant National Securities Corporation. ¶ 15.

***The Offering***

On June 4, 2014, CBD filed a registration statement with the Securities and Exchange Commission ("SEC") for the sale of approximately 1.8 million shares (the "Offering"). ¶ 34. That registration statement became effective on June 12, 2014, and the Offering closed on June 18, 2014. ¶¶ 35, 37. In that time period, on June 13, 2014, CBD's shares, which had previously traded on the Australian Stock Exchange and the NASD's Over-the-Counter Bulletin Board, began trading on NASDAQ. Oakes Decl., Ex. A at 29; *see also* ¶ 154. The registration statement and prospectus incorporated by reference CBD's audited financial statements for the

[2] Plaintiffs also alleged that a second PricewaterhouseCoopers entity, PwC US, served as CBD's independent auditor. ¶ 30. Plaintiffs, however, have now stipulated to dismissal of the claims against PwC US (*see* ECF Doc. No. 65.)

fiscal years ending June 30, 2012 and June 30, 2013, and the unaudited financial statement for the six-month period ending December 31, 2013. ¶ 41.

***CBD's Post-Offering Statements and Voluntary Administration Proceeding***

On October 24, 2014, CBD announced that its Audit Committee, together with PwC Australia, determined that CBD's audited financial statements for the fiscal years ending June 30, 2012 and June 30, 2013, and the unaudited financial statement for the six-month period ending December 31, 2013, could not be relied upon and would need to be revised. ¶ 85. CBD disclosed that its determination was based in part on uncertainty about the completeness and accuracy of disclosures with respect to related party transactions concerning defendant McGowan. ¶ 85. McGowan took a leave of absence from CBD and later resigned. ¶¶ 19, 85, 99.

On November 14, 2014, CBD's Board determined that the Company was insolvent or likely to become insolvent, and the Company and three of its subsidiaries entered voluntary administration under the Australian Corporations Act 2001. ¶ 101. On December 24, 2014, deeds of company arrangement were approved by a vote of creditors and, on January 27, 2015, the Company emerged from the voluntary administration. Oakes Decl., Ex. A at 4.

On March 19, 2015, CBD announced that it had changed its name from CBD Energy Ltd. to BlueNRGY Group Ltd. ¶ 17. This name change was proposed to shareholders on February 27, 2015, and approved by a shareholder vote on March 12, 2015. Pillinger Decl. ¶¶ 6-8. Formal notice of the name change was filed with Australian Securities & Investment Commission ("ASIC") and the SEC. Pillinger Decl. ¶ 8.

***This Lawsuit***

Plaintiffs filed this lawsuit on October 27, 2014, which was three days after CBD announced it would restate its financial information. Plaintiffs allege violations of the Section 11

of the Securities Act against all defendants, Section 12(a)(2) of the Securities Act against the Underwriters, and Section 15 of the Securities Act against all individuals named as defendants. ¶¶ 163-188.

***Plaintiffs' Belated Service on Pillinger***

From the time of its incorporation until March 30, 2015, CBD maintained its headquarters at 53 Cross Street, Double Bay, Sydney, New South Wales, Australia. Pillinger Decl. ¶ 4. This address was publicly listed as CBD's registered address and principal place of business in CBD's registration with ASIC and the SEC. *Id.* This address was listed on CBD's public filings with ASIC and the SEC, and was continuously listed on CBD's public website. Pillinger Decl. ¶ 4 and Exs. G-H. On March 30, 2015, CBD, now operating as BlueNRGY, moved its headquarters to 32 Martin Place, Sydney, New South Wales, Australia. Pillinger Decl. ¶ 9. To that effect, the Company filed a notice with ASIC, listing the Martin Place address as the new registered office address and principal place of business address for BlueNRGY. *Id.* Moreover, BlueNRGY changed its address on the front page of its public website. Pillinger Decl. ¶¶ 9-10. All of BlueNRGY's public securities filings in Australia and the United States since March 30, 2015 have listed the Martin Place address, including BlueNRGY's Form 20-F filed on June 1, 2015. Pillinger Decl. ¶ 11; Oakes Decl., Ex. A.

Plaintiffs first sought to serve Pillinger on May 6, 2015, when they sent a request for service under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), to the Australian Central Authority for service at CBD's former Cross Street address (*see* ECF Doc. No. 24). This was 194 days after Plaintiffs filed suit. This service was returned by the Australian authorities as incomplete (*see* ECF Doc. No. 49-1). Plaintiffs subsequently sent a renewed and revised request for service of process on September 3, 2015. Pillinger Decl., Ex. I. On November 5, 2015, 377 days after suit was filed, Pillinger was

handed a copy of the Request for Service of Judicial Process, Summons, and the Amended Class Action Complaint in this action while he was at BlueNRGY's offices at 32 Martin Place in Sydney, Australia. Pillinger Decl. ¶ 12; Ex. I.

By the time Pillinger was served, a number of events had already occurred in this lawsuit, including the following:

| | |
|---|---|
| October 31, 2014 and November 3, 2014 | Underwriters served |
| December 26, 2014 | Two sets of movants (a total of three individuals) move for appointment as Lead Plaintiff |
| May 19, 2015 | Plaintiffs and Underwriters file agreed motion to transfer from E.D. Tex. to S.D. Tex. |
| June 12, 2015 | Case transferred from E.D. Tex. to S.D. Tex. |
| June 29, 2015 | Order appointing Mahmmoud Sakhi as Lead Plaintiff |
| July 2, 2015 | Joint status report filed by Lead Plaintiff and Underwriters |
| July 21, 2015 | Scheduling conference and order setting schedule, including August 13, 2015 deadline for amended complaint |
| August 13, 2015 | Amended complaint filed, which purports to add two additional plaintiffs |
| September 9, 2015 | PwC US served |
| October 30, 2015 | Underwriters and PwC US move to dismiss |

## ARGUMENT

### I. Plaintiffs' Claims Against Pillinger Should Be Dismissed Because Plaintiffs Failed To Timely Serve Pillinger

Rule 4(m) of the Federal Rules of Civil Procedure normally requires plaintiffs to serve process on defendants within 120 days of filing the complaint.[3] The policy behind this rule is "to encourage prompt movement of civil actions in federal courts." Fed. R. Civ. P. 4(m) note (Analysis of H.R. 7154). Further, "[o]nce the statute [of limitations] has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims." *Gartin v. Par Pharm. Cos., Inc.*, 289 Fed. App'x 688, 694 (5th Cir. 2008) (quoting *Veazey v. Young's Yacht Sale & Serv., Inc.*, 644 F.2d 475, 478 (5th Cir. 1981)). Failure to serve timely process is consistently recognized as an appropriate basis for dismissing claims against a defendant. *See, e.g.*, *Simmons v. Regency Leasing LLC*, No. H-12-1512, 2013 WL 6190218, at *8-9 (S.D. Tex. Nov. 26, 2013) (Miller, J.) (dismissing claims against defendants not served within the 120-day period).

Although the bright-line 120-day rule in 4(m) does not apply to service in a foreign country, "good faith and reasonable dispatch" are still required. *Lozano v. Bosdet*, 693 F.3d 485, 489 (5th Cir. 2012). To that extent, the Fifth Circuit has adopted a "flexible due diligence" standard for determining the timeliness of foreign service of process. *Lozano*, 693 F.3d at 488-89; *see also Williams v. New Orleans Pub. Serv., Inc.*, 728 F.2d 730, 732 n.4 (5th Cir. 1984) (district courts have an "inherent power to 'manage their own affairs so as to achieve the orderly

[3] Fed. R. Civ. P. 4(m) was amended, effective December 1, 2015, to shorten the time for service from 120 days to 90 days. This rule took effect after service on Pillinger purportedly was effectuated.

and expeditious disposition of cases.'") (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *Arrow Electronics, Inc. v. Hecmma, Inc.*, No. EP-04-CA-390-PRM, 2005 WL 2548225, at *2 (W.D. Tex. Oct. 11, 2005) (requiring plaintiff to show cause for failing to serve defendant known to be in Mexico).

The "flexible due diligence" standard weighs "the reasonableness of the plaintiff's effort as well as the prejudice to the defendant from any delay." *Papst Licensing GmbH & Co. KG v. Sunonwealtlh Elec. Mach. Ind. Co., Ltd.*, 332 F. Supp. 2d 1142, 1151 (N.D. Ill. 2004); *see also Harris v. Orange S.A.*, _ Fed. App'x _, 2015 WL 9583862, at *8 (11th Cir. Dec. 30, 2015) (applying the "flexible due diligence" standard from *Lozano*, and finding that "simple inadvertence or mistake of counsel or ignorance of the rules" did not excuse lack of diligence); *Yellowave Corp. v. Mana*, No. 00 CIV 2267 SAS, 2000 WL 1508249, at *2 (S.D.N.Y. Oct. 11, 2000) (applying "flexible due diligence" standard to dismiss claims where plaintiff had not served defendant over 170 days after complaint filed); *Banco Central de Paraguay ex rel. Banco Union S.A.E.C.A. v. Paraguay Humanitarian Found., Inc.*, No. 01 Civ. 9649, 2005 WL 2861598, at *4 (S.D.N.Y. Oct. 31, 2005) (dismissing third party complaint against foreign third party defendant for failure to serve until two-and-a-half years after filing complaint, despite sending copy of complaint to defendant's U.S. counsel).

Where, as here, the applicable statute of limitations will bar future litigation, the court also considers whether dismissal is in the interest of justice—namely, whether there is "a clear record of delay or contumacious conduct by the plaintiff." *Lozano*, 693 F.3d at 490 (quoting *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008)). Factors to consider in determining whether dismissal is in the interest of justice include whether the delay: "(1) was

caused by the plaintiff himself, as opposed to by counsel; (2) resulted in actual prejudice to the defendants; or (3) was caused by intentional conduct." *Id.* (citing *Millan*, 546 F.3d at 326).

### A. Plaintiffs Failed To Exercise Diligence In Serving Pillinger

Here it is clear that Plaintiffs did not exercise due diligence and failed to serve Pillinger in a timely manner. First, rather than immediately begin service on Pillinger like Plaintiffs did with the Underwriters, Plaintiffs waited 194 days to even request service of process in Australia under the Hague Convention, a process that Plaintiffs knew or should have known may take months.[4] Plaintiffs admittedly undertook no efforts whatsoever to serve Pillinger within the normal 120 days. A number of courts find such a failure to be dispositive and dismiss claims on that basis alone.[5] In the Fifth Circuit, "[g]ood faith and reasonable dispatch are the proper yardsticks." *Lozano*, 693 F.3d at 489. "Though we do not insist that foreign service always be the first step, or that it be attempted within the first 120 days, in some cases that will be the only reasonable course." *Id.*; *see also Buffer v. GRM Comms., Inc.*, No. EP-09-CV-421-DB, 2010 WL 11252498, at *2 (W.D. Tex. Oct. 5, 2010) ("If, for example, a plaintiff made no attempt to

[4] The Hague Conference on Private International Law, the international organization that administers the Hague Conventions, reports that service in Australia under the Hague Convention can take up to three months or longer. *See* https://www.hcch.net/en/states/authorities/details3/?aid=878.

[5] *See Allstate Ins. Co. v. Funai Corp.*, 249 F.R.D. 157, 162 (M.D. Pa. 2008) ("[T]he exemption from the 120–day time limit for service in a foreign country does not apply where—as here—the plaintiff has not made a reasonable, good faith effort to attempt service abroad during the 120–day period."); *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133-34 (2d Cir. 2005) ("Although Rule 4(m) creates an exception for 'service in a foreign country pursuant to subdivision (f),' . . . this exception does not apply if, as here, the plaintiff did not attempt to serve the defendant in the foreign country."); *Russo Secs., Inc. v. Ryckman*, 159 Fed. App'x 294, 295 (2d Cir. 2005) (affirming dismissal where party did not attempt service of process on foreign defendant within 120-day time limit); *Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005) (noting that it may be proper to dismiss a claim if the plaintiff "made no attempt to begin the process of foreign service within 120 days.").

begin the process of foreign service within 120 days, it might be proper for a court to dismiss the claim.") (quoting *Nylok Corp.*, 396 F.3d at 807).

Here, Plaintiffs knew from the outset that Pillinger lives and works in Australia, the reasonable course was to attempt foreign service, and Plaintiffs failed to even start that process until more than two months after the 120-day period lapsed. Further, since Plaintiffs apparently made no efforts to effect service by other means during the 120-day period, any argument that a reasonable course included some other manner of service rings hollow.

Second, once Plaintiffs finally attempted service on day 194, Plaintiffs apparently did not conduct any diligence to ensure they were serving Pillinger at the correct address. Pillinger's office address has been publicly available since the date the original complaint in this action was filed; in fact, Plaintiffs obtained a summons for Pillinger at the then-current CBD office address in New South Wales, Australia the same date the complaint was filed: October 27, 2014. Had Plaintiffs begun service on Pillinger at the time the complaint was filed, service could have been effected within the 120-day window and at the proper address. Instead, Plaintiffs dragged their feet and waited 194 days, until May 6, 2015, before sending their first Hague request. By that time, CBD's office address had moved. Nonetheless, had Plaintiffs exercised a modicum of reasonable due diligence, they would have discovered this change in address and had the summons and complaint sent to the proper address for CBD. By May 6, 2015, CBD had been operating from its new address at Martin Place for over a month. This address was listed on the Company's profile with ASIC, which is easily accessible through ASIC's online records database, ASIC Connect. ASIC Connect, much like the SEC's EDGAR database, contains the filed documents by public Australian companies. Through the website, any private individual, including Plaintiffs or their counsel, could have seen by searching for CBD or BlueNRGY that

the Company had filed a Notice of Change to Company Details with a Change of Registered Address and Change of Principal Place of Business. *See* Ex. A; Pillinger Decl. ¶ 5.

Third, Plaintiffs' failure to serve Pillinger for over a year since filing this action has prejudiced Pillinger's defense. Two competing motions for appointment as lead plaintiff and lead counsel were filed in this case. Pillinger did not have the opportunity to weigh in on either or both of these motions. *See Read v. Input/Output*, No. H-05-0108 (S.D. Tex. June 22, 2015) (Order Denying Appointment of Lead Plaintiff and Lead Counsel) (declining to appoint lead plaintiff or lead counsel where defense counsel raised material issues concerning suitability) (Oakes Decl., Ex. B). The parties who had appeared in the litigation entered an agreed-upon motion to transfer this case from its original venue in the Eastern District of Texas to this District. Pillinger was unable to participate in that motion or the decision to transfer venue. Even if nothing had occurred in this lawsuit, which is clearly not the case, the mere passage of so much time is prejudicial. *See Veazey*, 644 F.2d at 478 (when service is delayed "the defendant is not put on formal notice and allowed a full opportunity to discover and preserve relevant evidence when the matter is still relatively fresh and the evidence is intact and available").

### B. Dismissal Is In The Interest Of Justice Because There Is A Clear Record Of Delay

Claims brought under the Securities Act must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. Since Plaintiffs waited longer than the entire statute of limitations to serve Pillinger, and since dismissal here will result in the dismissal of this action with prejudice as to Pillinger, the court also considers whether dismissal is in the interest of justice—namely, whether there is "a clear record of delay or contumacious

conduct by the plaintiff." *Lozano*, 693 F.3d at 490 (quoting *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008)).

Here, as set forth above, there is a clear record of delay caused solely by Plaintiffs' intentional conduct. Pillinger was served approximately two months after Plaintiffs finally properly initiated service under the Hague. Had Plaintiffs not (1) inexplicably waited 194 days to even start the service process and then (2) initiated service on the wrong address even though the correct address was readily available, then Pillinger would have been served approximately two months after this case started. This is not a case like *Lozano*, where the plaintiff made multiple unsuccessful attempts at service within 120 days. *See Lozano*, 693 F.3d at 786-87. Plaintiffs first did nothing and then, after waiting more than six months, apparently did not check to see if the address they were using was current. As set forth above, this delay resulted in actual prejudice to Pillinger and dismissal is warranted.

The case of *Gartin v. Par Pharmaceutical Companies, Inc.*, 289 Fed. App'x. 688 (5th Cir. 2008), is instructive. In *Gartin*, the plaintiff served a defendant 212 days after filing its complaint. 289 Fed. App'x at 690-91. Here, Plaintiffs waited 194 days to even start the process of serving Pillinger, then proceeded to use the wrong address (even though the correct address was publicly available), and did not actually effect service until 377 days after filing their complaint. In *Gartin*, the plaintiff argued that the defendant needed to show a clear record of delay since the statute of limitations would bar them from refiling suit. *Id.* at 693. Here, limitations will also bar refiling and Plaintiffs will likely make a similar argument. In *Gartin*, the Fifth Circuit affirmed the trial court's dismissal, noting there was "a seven-month period of what can only be characterized as total inactivity." *Id.* at 694. Here, there is an even clearer and longer record of delay, and dismissal is appropriate. *See also Newby v. Enron Corp.*, 284 Fed.

App'x 146, 150 (5th Cir. 2008) ("[W]e have rejected the argument that dismissal is unwarranted when the statute of limitations period has run.").

## II. The Lead Plaintiff's Section 11 Claim Fails For The Reasons Set Forth In The Underwriters' Motion To Dismiss

The Underwriters' Motion to Dismiss sets forth, among other things, that the Lead Plaintiff's Section 11 claim fails because he does not adequately allege that the shares he purchased are traceable to the Offering (Section III.A), and that Lead Plaintiff may not serve as the representative for a putative class for which he is not a member (Section III.C). Pillinger hereby joins in the Underwriters' Motion to Dismiss and adopts the arguments set in Sections III.A and III.C of that motion.

Further, since the Section 11 claim fails for the reasons set forth in the Underwriter's Motion to Dismiss, the Section 15 claim asserted against Pillinger also fails. *See, e.g.*, *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 221 (5th Cir. 2004) ("[B]ecause they have failed to allege a Section 11 violation, their section 15 claim must fail as well.").

## CONCLUSION

For these reasons, Pillinger respectfully requests that the Court dismiss the claims against him with prejudice.

Dated: February 19, 2016

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

/s/ Mark Oakes

Gerard G. Pecht
State Bar No. 15701800
gerard.pecht@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

Mark Oakes
State Bar No. 24062923
mark.oakes@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701-4255
Telephone: (512) 536-5221
Facsimile: (512) 536-4598

*Counsel for Defendant Richard Pillinger*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on February 19, 2016, which caused an electronic copy of this document to be served on all counsel of record in this matter.

/s/ Mark Oakes
Mark Oakes