### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH PANKOWSKI, *on behalf of himself and others similarly situated*, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION H-15-1668 |
| BLUENRGY GROUP LIMITED, f/k/a CBD ENERGY LIMITED, *et. al.*, | § § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are two motions to dismiss Joseph Pankowski's amended complaint (Dkt. 27) filed by National Securities Corporation and Northland Securities (the "Underwriter Defendants") (Dkt. 109) and Todd Barlow (Dkt. 105). Defendants Richard Pillinger and Todd Barlow joined the Underwriter Defendants' motion to dismiss (Dkt. 109). Dkt. 110. After considering the motions, responses, replies, oral arguments, and applicable law, the court is of the opinion that the Underwriters Defendants' motion to dismiss should be DENIED and Barlow's motion to dismiss should be DENIED.

## I. BACKGROUND

On August 13, 2015, former lead plaintiff Mahmmoud Sakhi and named plaintiffs Joseph Pankowski and Dmytro Kavchak filed this class action lawsuit against twelve individuals and entities including the Underwriter Defendants, Todd Barlow, Richard Pillinger, and Pricewaterhouse Coopers (PwC) Australia, under the Securities Act of 1933. Dkt. 27. The putative class consists of all persons (other than the defendants) who purchased common stock of CBD Energy Limited ("CBD") (now known as BlueNRGY Group Limited) from June 13, 2014, to October 24, 2014

("class period"), pursuant to the CBD's Registration Statement and Prospectus issued in connection with the CBD's public offering. *Id*. at 2. The plaintiffs allege violations of section 11 of the Securities Act against all defendants, section 12(a)(2) violations against the Underwriter Defendants, and section 15 violations against all individual defendants.[1] *Id.* at 28, 44. This action is governed by the Private Securities Litigation Reform Act (PSLRA), which mandates a stay of "all discovery and other proceedings" while a motion to dismiss is pending and specifies certain duties for the lead plaintiff in a class action. 15 U.S.C. § 77z-1.

On July 6, 2016, the court dismissed the claims asserted by Sakhi and Kavchak, but substituted Pankowski as the new lead plaintiff. Dkt. 100. The court also dismissed all claims against PwC Australia. *Id*. Finally, the court denied Pillinger's motion to dismiss for a delay in service. *Id*.

On August 8, 2016, Barlow filed a motion to dismiss for a delay in service. Dkt. 105. On September 7, 2016, the Underwriter Defendants sent Pankowski a cashier's check for $6,671.51, an amount they assert represents is the maximum damages he could expect to recover. Dkt. 109. With this tender of settlement, the Underwriter Defendants also filed a motion to dismiss for lack of subject matter jurisdiction based on mootness. *Id.* Defendants Pillinger and Barlow joined the Underwriter Defendants' motion to dismiss. Dkt. 110. Pankowski, through his lawyers, rejected the check and disputes the claim is moot. *Id*.; Dkt. 111. As an alternative, the Underwriter Defendants have offered to deposit the amount with the court. Dkt. 120 at 19. Both parties responded and replied to both motions to dismiss. Dkts. 107, 108, 111, 112.

---

[1] A description of the events leading up to the allegations in this class action are described in the court's Memorandum Opinion and Order issued on the previous motions to dismiss and are incorporated herein. Dkt. 100 at 2–5.

## II.  THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS

**A.**   **Legal Standards**

1.  Mootness

Under Article III of the United States Constitution, federal judicial power extends only to a live case or controversy.  U.S. Const. art. III, § 2.  The case or controversy requirement encompasses the jurisdictional doctrine of mootness.  *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004).  "[A]ny set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot."  *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). Article III of the Constitution limits this court's jurisdiction to "cases" or "controversies" and encompasses the jurisdictional doctrine of mootness and standing.  U.S. Const. art. III, § 2, cl. 1; *In re Scruggs*, 392 F.3d at 128; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 529 U.S. 167, 189 (2000).  Further, a federal court lacks constitutional authority to determine the merits of a moot case or controversy.  *Envtl. Conservation Org. v. City of Dall.*, 529 F.3d 519, 525 (5th Cir. 2008).  "A controversy becomes moot where, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interest to maintain the litigation."  *In re Scruggs*, 392 F.3d at 128 (*quoting Chevron U.S.A., Inc. v. Traillor Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993)).  If a controversy is moot, the court lacks the subject matter jurisdiction to adjudicate the case, and the case must be dismissed.  Fed. R. Civ. P. 12(b)(6)(1).

2.  Relation Back Doctrine

Following a class certification, the class has an independent legal status from the named plaintiff.  *Sosna v. Iowa*, 419 U.S. 393, 402–03, 95 S.Ct. 553 (1975).  Therefore, even if the named plaintiff's claim becomes moot after the class is certified, the court will not find mootness with respect to the class.  *Id*.  The *Sonsa* Court reasoned, "[w]hen the District Court certified the propriety

3

of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [the named plaintiff]." *Id.* at 400. Consequently, a live controversy can continue to exist even when the named plaintiff's claim becomes moot, and the claim continues to "relate back" to the filing of the complaint in order to stay alive. *Id.* at 399–402; *Fontenot v. McCraw*, 777 F.3d 741, 748 (5th Cir. 2015).

**B.    Analysis**

The Underwriter Defendants argue that Pankowski's individual claims are mooted by the tender of settlement. Dkt. 109 at 3. Further, they argue, that because Pankowski has not yet moved for class certification, the entire claim should be dismissed as moot. *Id.* at 5. The court concludes that Pankowski's individual claim is not moot as a result of the tender of settlement for two independent reasons: (1) Pankowski rejected the tender of settlement; and (2) Pankowski's legal fees and litigation expenses were not included in the tender of settlement.

1. Rejection of settlement tender

An unaccepted offer of settlement does not moot the named plaintiff's claims nor those of the putative class — even prior to a motion to certify a class. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Here, the Underwriter Defendants have actually tendered settlement, not merely offered settlement, and they argue that this distinction should yield a different outcome than that in *Campbell-Ewald*. Dkt. 109. But, the court agrees with Pankwoski that, even before a motion to certify a class, the plaintiff may reject a tender of settlement in the same way the *Campbell-Ewald* plaintiffs rejected an offer of settlement.

In *Campbell-Ewald*, the Supreme Court held that the plaintiff may reject a settlement offer and "must be accorded a fair opportunity to show that certification is warranted." *Id*. at 672. But the

*Campbell-Ewald* majority reserved a decision on whether a claim can be mooted by an actual tender of settlement. *Id.* at 672 ("We need not, and do not, now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount. That question is appropriately reserved for a case in which it is not hypothetical.")  The dissent in *Campbell-Ewald* opines that, in such a hypothetical situation, tendering a cash settlement could yield a different result than an offer of settlement. *Id.* at 684 (Alito, J. dissenting) (arguing that to moot a controversy "[t]he most straightforward way is simply to pay over the money.").

Since the *Campbell-Ewald* holding, several district courts outside of this circuit have addressed, with varying outcomes, whether actual tender of relief to the lead plaintiff combined with an entry of a judgement in the plaintiff's favor moots the claim. *Compare Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-cv-3232, 2016 WL 872914, at *1 (S.D.N.Y. Mar. 7, 2016) (concluding that a plaintiff's telephone consumer protection class claims survived even after the defendant deposited a check with the court and assented to injunctive relief, and finding that the plaintiff was entitled to "a fair opportunity to show that class certification is warranted"), *and Brady v. Basic Research, LLC*, 312 F.R.D. 304, 306 (E.D.N.Y. 2016) ("[G]iven the Supreme Court's directive that a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted," the court did not allow the defendants to deposit a check with the court consistent with the defendants' offer of judgment)*, with Price v. Berman's Auto., Inc.*, No. 14-763-JMC, 2016 WL 1089417, at *3 (D. Md. Mar. 21, 2016) (stating it would dismiss the plaintiff's claim as moot if the defendant "reissue[d] an unconditional cashier's check equal to the [requested relief]"), *and Leyse v. Lifetime Entm't Servs., LLC*, No. 13 CIV. 5794 (AKH),

2016 WL 1253607, at *2 (S.D.N.Y. Mar. 17, 2016) ("[O]nce the defendant has furnished full relief, there is no basis for the plaintiff to object to the entry of judgment in its favor.").

The Underwriter Defendants' argument that the controversy is mooted by their tender of settlement relies on the combination of the *Campbell-Ewald* dissent and the majority's decision to wait for a live claim to opine on whether a tender of a settlement will result in a different outcome than an offer of settlement. Dkt. 109. To support the argument that this case should yield the opposite outcome from *Campbell-Ewald*, the Underwriter Defendants cite to an earlier Fifth Circuit decision in which a tender of settlement was made to the plaintiffs in *Fontenot v. McCraw*, 777 F.3d 741 (5th Cir. 2015).

In *Fontenot*, three drivers sued the Texas Department of Public Safety, on behalf of themselves and a putative class, for claims based on errors on their driving records. *Id.* at 745. The state corrected the driving records for the three named plaintiffs prior to their motion to certify a class (and in one case prior to the filing of the lawsuit), thus tendering full relief. *Id.* at 749. In that case, the Fifth Circuit held that the tendering of the settlement mooted the plaintiffs' individual claims. *Id*.

The court acknowledges that if the precedent in *Fontenot* is followed, without considering the *Campbell-Ewald* decision, then Pankowski's failure to file for certification of class action before a tender of complete settlement would moot his claim. The question in this case is whether *Campbell-Ewald* has altered how the court should interpret the Fifth Circuit precedent in *Fontenot*. Though both cases address mooting of a claim before class certification, *Campbell-Ewald* addresses the effect of an offer of a settlement and *Fontenot* addresses the effect of a tendering of a settlement. But this court also finds another distinction between these two cases: the plaintiffs in *Fontenot* did not reject the settlement offer from the state. In fact, they could not reject it as it was a voluntary change in

6

behavior by the defendant (correcting the driving record) rather than monetary in nature. *Fontenot*, 777 F.3d at 747. Here, the relief Pankowski asks for is monetary, which is something that the plaintiff is capable of rejecting. Dkt. 27 at 44.

Returning to the majority's rationale in *Campbell-Ewald,* the Supreme Court's holding is rooted in contract law.[2] *Campbell-Ewald*, 136 S. Ct. at 671. The majority holds that a settlement offer is an offer in a contract, requiring an acceptance from the other party in order for that offer to be binding. *Id*. Applying the same contract law rationale used by the *Campbell-Ewald* majority, this court sees no reason to find that the actual tender of settlement is any more binding on the other party than an offer of settlement in contract law. It is a distinction without a difference in outcome. As Justice Kagan notes, an offer without an acceptance is a "legal nullity." *Id*. at 676. Pankowski rejected the settlement tender, returning the check to the Underwriter Defendants and alleging he has a fiduciary duty under the PLSRA to fully litigate the claims of his class. Dkt. 111 at 3. Therefore, the court finds that Pankowski's rejection of the tender of the settlement means he still has a live controversy.

2. Lawyers' Fees and Litigation Expenses

Alternately, even if the court had found that the tender of a complete settlement to the lead plaintiff in a class action prior to a motion to certify the class is enough to moot the claim, the settlement tender is not complete without Pankowski's legal fees and litigation expenses. Though both parties agree that the $6,671.51 tendered is the maximum amount of Pankowski's damages (based on his purchased shares during the class period and prejudgment interest), they disagree about

---

[2] Justice Thomas's concurrence in *Campbell-Ewald* also discusses the common law of tenders as a rationale for allowing a plaintiff to reject both a settlement offer and tender of settlement. *Campbell-Ewald*, 136 S. Ct. at 675 (Thomas, J. concurring). Justice Thomas also opines that a tender of full settlement is an admission of liability under the common law of tenders. *Id*. Pankowski, in a footnote, highlights this concurrence to argue that the Underwriter Defendants admitted liability by tendering a settlement. Dkt. 111 at n.3. The Underwriter Defendants deny that the tender of settlement is an admission of liability. Dkt. 113 at n.2.

his claim to litigation expenses.  Dkt. 120 at 28 (Pankowski's attorney stated the amount "appears to satisfy his financial loss requirement, but it doesn't make him whole, nor does it compensate him for what he's asked for in the complaint.")

An "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."  *Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 480, 110 S. Ct. 1249 (1990).  Here, Pankowski is making a claim for more than just attorneys' fees; he has a potentially meritorious underlying controversy.  Further, Pankowski's claims are made under PSLRA, and successful prosecution of PSLRA claims are eligible for a fee award. 15 U.S.C. § 78u–4(a)(6).  Therefore, Pankowski continues to have an interest in his attorneys' fees and litigation expenses, which have not been satisfied with the tendered settlement.

Settlement offers under Federal Rule of Civil Procedure 68 usually include fees when appropriate.  Rule 68 specifically references "costs then accrued" as part of a settlement offer.   Fed. R. Civ. P. 68(a); *see also* Dkt. 109 at 3.  Though the Fifth Circuit acknowledges that a full offer under Rule 68 renders a claim moot, those offers included attorneys' fees and litigation expenses.  *See, e.g.*, *Payne v. Progressive Fin. Servs., Inc.*, 748 F.3d 605, 606 (5th Cir. 2014) (the offer included "damages of any kind, plus attorneys' fees and costs incurred as of the date of the offer and to be determined by agreement or court order"); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 914 (5th Cir. 2008) (the offer of judgment included damages plus reasonable attorneys' fees).  Here, the Underwriter Defendants' tender of settlement is not complete without attorneys' fees and litigation expenses that Pankowski incurred at least through the date of the tender of settlement.

Pankowski also advances the argument that he has an interest in shared litigation expenses with the class.  But the *Campbell-Ewald* majority observes, in a footnote, without reaching a decision on whether a claim for just class relief prevents a case from becoming moot: "[The named plaintiff's]

8

interest in sharing attorney's fees among class members or in obtaining a class incentive award does not create Article III standing." *Campbell-Ewald*, 136 S. Ct. at 679 n.1. *But see Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 341, 100 S. Ct. 1166 (1980) (Rehnquist, J. concurring) ("[T]he defendant has not offered all that has been requested in the complaint (i.e., relief for the class).").  The court concludes that the tender of settlement is insufficient without at least Pankowski's litigation fees and expenses, and therefore it cannot moot his claim.

Finally, the court observes that "[t]he overaching goal is to determine whether the defendant's actions are mere 'litigation posturing' or whether the controversy is extinguished." *See Fontenot v. McCraw*, 777 F.3d 741, 748 (5th Cir. 2015) (quoting *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704.3d 413, 426 n.3 (5th Cir. 2013)) (commenting on whether there is still a live claim for injunctive relief in a class action after the defendant has voluntarily reversed the offending behavior). In this case, the defendants have filed multiple motions, stayed litigation, and successfully challenged other lead plaintiffs, all prior to tendering this settlement offer to the current lead plaintiff.  This supports Pankowski's argument that this attempted settlement is more likely "litigation posturing" rather than an attempt to extinguish the controversy with the shareholders that bought shares during the class period.[3]

Because Pankowski's individual claims are not mooted because he rejected the tender of settlement and because the tender did not include lawyers' fees and litigation expenses, the court DENIES the Underwriter Defendants' motion to dismiss.

---

[3] Pankowski also argues that dismissal of his claim would trigger a statute of limitations issue preventing a new lead plaintiff from certifying a class. Dkt. 111 at 4.  The Underwriter Defendants dispute this contention, rather arguing the statute of limitations is properly tolled. Dkt. 113 at 4.  The court need not address the merits of these arguments because the Underwriter Defendants expressly waived any statute of limitations arguments against the class based on a dismissal.  Dkt. 120 at 32–33.

### III. TODD BARLOW'S MOTION TO DISMISS

Barlow, a former non-executive director of CBD, asserts that he should be dismissed from this lawsuit due to the delay in service of process.   Dkt. 106.   Ordinarily, Rule 4(m) of the Federal Rules of Civil Procedure requires plaintiffs to serve the defendants within 120 days of filing the complaint. Fed. R. Civ. P. 4(m).  Here, Pankowski's first attempt to serve Barlow was 194 days after the suit was filed, via the Hague Convention on Service Abroad of Judicial and Extrajudicial ("Hague Convention").  Dkt. 106 at 5.   But, the 120-day rule in 4(m) does not apply because Barlow is a foreign defendant residing in Australia.   The Fifth Circuit has adopted a "flexible due diligence" standard for determining the timeliness of foreign service of process.  *Lozano v. Bosdet*, 693 F.3d 485, 490 (5th Cir. 2012).

In cases in which failure to serve process results in dismissal with prejudice, the Fifth Circuit requires that the defendant show "a clear record of delay or contumacious conduct by the plaintiff." *Id*. at 490.   The Fifth Circuit generally only affirms aa district court's dismissal with prejudice when the delay: "(1) was caused by the plaintiff himself, as opposed to by counsel; (2) resulted in actual prejudice to the defendants; or (3) was caused by intentional conduct."  *Id*. (citing *Milan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008)).   None of these factors is present in this case.

First, there is no evidence the delay was caused by the plaintiff himself.   Though over a year and a half has elapsed between the filing of the lawsuit and service, Barlow does not appear to argue that the delay was caused by the plaintiff himself, as opposed to his counsel.   Dkt. 105.   Rather, Barlow's arguments amount to attacks on *counsel's* failure to exercise diligence in serving Barlow. Dkt. 105 at 6–7.

On May 6, 2015, plaintiff's counsel initiated service of process on Barlow pursuant to the Hague Convention.  Dkt. 24 at 2.  Barlow points out that he had already resigned from CBD's board

and notified the Securities and Exchange Commission by the time the lawsuit was filed.  Dkt. 105 at

6–7.  Barlow also asserts that information about his new place of employment (where he could receive

service) was available via press releases and websites.  *Id*. at 5.  On November 10, 2015, the former

lead plaintiffs moved for service by publication, which the court granted on November 30, 2015.  Dkt.

54.  Actual publication did not occur until April 28, 2016.  Dkt. 86.  At this time, Pankowski had not

even been appointed as lead plaintiff.  Dkt. 100.  Therefore, Pankowski cannot be deemed at fault for

the delay in attempting service before he was even the lead plaintiff.  Approximately one month prior

to the date that counsel attempted service, CBD's office address moved.  Dkt. 107 at 3.

Consequently, counsel used the wrong address for serving Barlow, causing further delay.  *Id*.

Plaintiff's counsel admits he "erred" in this service.  *Id*.

Barlow asserts that if the plaintiff had exercised reasonable due diligence, he would have

discovered the change in address or Barlow's new place of employment and sent the summons and

complaint to the proper address.  *Id*. at 9–10.  Therefore, Barlow argues that service by publication

was improper.  The court find that this is a failing of the plaintiff's counsel, and not the plaintiff

himself.

Second, it appears that the delay in service was not caused by any intentional conduct.   As

plaintiff's counsel asserts, there is no reason for an intentional delay in service, because plaintiffs do

not benefit from that.  *Id.*  at 107.  Therefore, without any more evidence, the court cannot rely on this

as a basis to dismiss this case with prejudice.

Next, to support his argument that the delay was contumacious, Barlow relies on authority that

dismissal is proper when the plaintiff failed to comply with court orders, resulting in excessive delays.

Dkt. 105 at 7.  However, here, there is no court order in play.  Though the court granted a motion to

serve process by publication at the request of the plaintiff, the court did not order service of process

within any given time frame or issue a scheduling order.  Dkt. 54.  Therefore, it is impossible for the court to conclude that the plaintiffs failed to comply with a court order, and, as already discussed, the plaintiff was not bound by Federal Rule of Civil Procedure 4(m).

Finally, it does not appear that Barlow has suffered any prejudice from the delay.  The facts in this case establish that Barlow had actual knowledge of this lawsuit prior to service of process.  On August 4, 2015, Barlow's counsel contacted the plaintiff's counsel and requested a letter informing him of the pending lawsuit.  Dkt. 107 at 3.  Soon after, the plaintiff's counsel sent the letter and filed an amended complaint.  *Id*.

Barlow claims he was prejudiced by the delay because he missed the deadlines on three previous motions to dismiss and the associated oral arguments.  Dkt. 105 at 8. The first was a motion to dismiss co-defendant Pillinger for lack of timely service, very similar to Barlow's own motion.  Dkt. 71.  Barlow was not a party to Pillinger's motion, and the court heard Barlow's oral arguments at a separate hearing on his own pending motion to dismiss for lack of timely service.  Dkt. 120.  The second motion to dismiss was filed by PwC Australia, and that motion was granted, but Barlow, again, had no interest nor was he a party to that motion.  Dkt. 72.  The third motion was a motion to transfer venue.  Dkt. 15.  With respect to aliens such as Barlow, venue is proper everywhere, so Barlow had no basis to contest the parties' joint motion to transfer venue.  Nor does Barlow have standing to contest any of the lead plaintiff's motions.  *See, e.g., In re Landry's Seafood Rest.*, No. Civ.A. H-99-1948, 2000 WL 33999467, at *1 (S.D. Tex. March. 30, 2000) (Harmon, J.) (holding that pursuant to the express language of the PSLRA, defendants lack standing to challenge the selection of proposed lead plaintiffs).  With regard to any deadlines for answers, the plaintiff consented to extensions of time as necessary.  Dkt. 107 at 7.  Accordingly, Barlow has failed to establish that he suffered prejudice.

12

Considering these three factors: (1) that the delay was caused by plaintiff's counsel, not Pankowski himself, (2) that the delay does not appear intentional or contumacious, and (3) that Barlow did not suffer any prejudice from the delay in service, the court finds that dismissing Pankowski's claims against Barlow with prejudice is not in the interest of justice.  Therefore, Barlow's motion to dismiss is DENIED.

## IV. CONCLUSIONS

Barlow's motion to dismiss (Dkt. 105) is DENIED.

The Underwriter Defendants' motion to dismiss (Dkt. 109) is DENIED.

Signed at Houston, Texas on December 9, 2016.

_____
Gray H. Miller
United States District Judge